# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HSH, INC., a California Corporation; HS RAZUKI, INC., a California Corporation; 3201 NATIONAL, INC., a California Corporation; and HAPPY INVESTMENTS, LP, a California Limited Partnership,<br><br>                    Plaintiff,<br>vs.<br>THE CITY OF EL CAJON, a California municipality,<br><br>                    Defendant. | CASE NO. 13cv2881 WQH-NLS<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss filed by Defendant City of El Cajon. (ECF No. 12).

**I. Background**

On December 4, 2014, Plaintiffs HSH, Inc., HS Razuki, Inc., and 3201 National, Inc. initiated this action by filing a Complaint in this Court. (ECF No. 1). On February 13, 2014, Plaintiffs, adding Happy Investments, LP as a plaintiff, filed the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 15(a)(1). (ECF No. 7). On March 13, 2014, Defendant filed the Motion to Dismiss First Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Motion to Dismiss"), accompanied by a Request for Judicial Notice. (ECF No. 12). On March 31, 2014, Plaintiffs filed an opposition. (ECF No. 13). On April

7, 2014, Defendant filed a reply. (ECF No. 14).

## II. Allegations of the FAC

The FAC challenges the validity of the City of El Cajon's ("the City") Ordinance 4994, codified as Chapter 17.210 of Title 17 of the City's municipal code (the "Ordinance"). "The Ordinance purports to 'protect the general health, safety, and welfare of the residents of the city of El Cajon and to prevent nuisance activities where alcoholic beverage sales occur.'" (ECF No. 7 at 2) (citing El Cajon Municipal Code ("ECMC") § 17.210.020). However, the Ordinance "picks favorites" by "heralding the interests of big business and big-box retailers over those of the smaller neighborhood businesses truly affected." *Id.* The Ordinance applies to establishments that conduct retail sales of alcoholic beverages for consumption off the premises where sold ("off-sale alcoholic beverage retailers"). However, the Ordinance expressly exempts "big-box retailers (who typically sell even more alcohol than the small neighborhood retailers affected by this Ordinance)." *Id.*

"The Ordinance presently requires that all new, modified, or redeveloped off-sale alcoholic beverage retailers obtain a conditional use permit prior to engaging in any alcoholic beverage sales activity unless the establishment consists of 'a general retail store, a grocery store, or a retail pharmacy, which has (1) at least 10,000 square feet or gross floor space, and (2) a maximum of 10 percent of the gross floor area devoted to the sales and display of alcoholic beverages.'" *Id.* at 6-7 (citing ECMC § 17.210.080(B)). Under the Ordinance, new, modified, or redeveloped off-sale alcoholic beverage retailers' ("new, modified, or redeveloped retailers") sales activities must be "be designed, constructed, and operated to conform to countless operational standards" including restrictions on alcohol sales, alcohol displays, and signage. *Id.* at 7. The "operational standards," applicable to new, modified, or redeveloped retailers, prohibit, among other things, the exterior advertising of alcohol, tobacco, and paraphernalia. "Conditional use permits may be suspended, modified, or revoked by the Planning Commission for violation of the Ordinance." *Id.* at 7.

1    Established off-sale alcoholic beverage retailers ("established retailers") have
2 "deemed-approved" status under the Ordinance. *Id.* Established retailers may continue
3 to lawfully operate by satisfying a training requirement, paying an annual permit fee,
4 and complying with various performance standards. *Id.* at 8. "Deemed approved status
5 may be suspended, modified, or revoked by the Planning Commission for violation of
6 the Ordinance." *Id.* at 9.
7    Plaintiff HSH owns Fair Valley Liquor and Main Street Market #2, which both
8 have deemed approved status under the Ordinance.  However, they are unable to send
9 their employees to the trainings required by the Ordinance.  Main Street Market #2 will
10 become a modified establishment when it applies for a license to sell distilled spirits in
11 addition to wine.  Main Street Market #2 will therefore be subject to "burdensome
12 restrictions" and suffer "economic diminution on the value and potential resale value."
13 *Id.* at 4.  Main Street Market #2 will also be operating in "violation of various
14 operational standards contained in section 17.210.100 of the Ordinance" upon receipt
15 of its new license. *Id.*
16    Plaintiff HS Razuki owns Main Street Liquor.  Main Street Liquor recently
17 received a conditional use permit under the Ordinance as a modified or redeveloped
18 retailer.  Main Street Liquor suffers and will continue to suffer economic diminution of
19 value from the "burdensome restrictions on alcoholic beverage sales." *Id.* "Also, as
20 Main Street Liquor will operate in the same manner in which it has been operating, it
21 will be in violation of various operational standards contained in section 17.210.100 of
22 the Ordinance." *Id.*
23    Plaintiff 3201 National owns Main Street Liquor #3.  Main Street Liquor #3 has
24 deemed approved status, but it cannot send its employees to the required trainings. *Id.*
25 at 5. Main Street Liquor #3 presently suffers economic diminution due to  burdensome
26 restrictions it would face, should "the business want to modify or redevelop its store."
27 *Id.*
28    Plaintiff Happy Investments owns 3 Brothers Liquor.  3 Brothers Liquor has

deemed approved status, but it cannot send its employees to the required trainings. *Id.* 3 Brothers Liquor presently suffers economic diminution due to the prospective burdensome restrictions it would face, should "the business want to modify or redevelop its store." *Id.*

Plaintiffs challenge the statute on the following grounds: (1) violation of the Equal Protection Clause (brought by HSH and HS Razuki only), (2) void for vagueness under the Due Process Clause, (3) violation of the Due Process Clause, (4) preemption by California Business & Professions Code § 23790, (5) preemption by Article XX of the California Constitution, (6) violation Article XIII C, § 2(b) of the California Constitution, as amended by Proposition 26, and (7) violation Article XIII C, § 2(d) of the California Constitution. For each claim, Plaintiffs request: (1) a declaratory judgment that the Ordinance is "unlawful, void and unenforceable," (2) a permanent injunction, temporary injunction, or temporary restraining order prohibiting enforcement, and (3) attorney's fees and costs. *Id.* at 16-18.

## III. Article III Standing

Defendant contends that Plaintiffs lack standing because they have failed to allege an injury in fact. Defendant contends that the alleged injuries stemming from violating the Ordinance are hypothetical because Plaintiffs have not alleged that they plan to violate the ordinance. Defendant further contends that simply not wanting to comply with regulations is not harm to a legally protected interest because Plaintiffs do not have a right "to operate their business as they see fit." (ECF No. 14 at 3). Finally, Defendant contends that the complained of injury is not particularized because it is an injury common to "all alcoholic beverage sales establishments in the City." *Id.* at 4.

Plaintiffs assert that they have adequately alleged actual economic diminution on the value of their businesses as a result of the Ordinance. Plaintiffs also assert that they have adequately alleged imminent future harm in their inability to comply with the Ordinance's requirement of employee trainings, and Main Street Market #2 and Main Street Liquor's plans to continue operating as before in violation of the Ordinance.

1    Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal on grounds that the court lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). The burden is on the plaintiff to establish that the court has subject matter jurisdiction over an action. *Assoc. of Med. Colls. v. United States,* 217 F.3d 770, 778-779 (9th Cir. 2000). In resolving an attack on a court's jurisdiction, the court may go outside the pleadings and consider evidence beyond the complaint relating to jurisdiction without converting the motion to dismiss into a motion for summary judgment. *Safe Air For Everyone v. Doyle,* 373 F.3d 1035, 1039 (9th Cir. 2004).

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). The party invoking federal jurisdiction bears the burden of establishing Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). This party must establish (1) an "'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not conjectural or hypothetical,'" (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Id.* at 560-61 (citations omitted). "[A] plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). In the absence of a plaintiff's Article III standing, a court lacks subject matter jurisdiction to entertain the lawsuit. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109-110 (1998). "When . . . the plaintiff defends against a motion to dismiss at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice because we presume that general allegations embrace those specific facts that are necessary to support the claim." *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009) (citations and internal quotations omitted); *see also Carrico v. City and Cnty.*

1 *of San Francisco*, 656 F.3d 1002, 1006 (9th Cir. 2011) (noting that, at the pleading
2 stage, standing analysis is based "on the allegations of the . . . complaint, which we
3 accept as true").

### A. Equal Protection (First Claim)

The equal protection claim is asserted by HSH and HS Razuki. HSH "is applying for a license to also sell distilled spirits" for its Main Street Market #2. (ECF No. 7 at 3). "Because Main Street Market #2 will, as a result, be a modified establishment under the Ordinance, it will apply for a conditional use permit." *Id.* HS Razuki's Main Street Liquor "recently received a conditional use permit under the Ordinance because it has been modified and/or redeveloped and will be operating as a modified and/or redeveloped establishment." *Id.* at 4. The FAC alleges that the Ordinance violates the Equal Protection Clause because new, modified and/or redeveloped small retailers are required to obtain a conditional use permit, while new, modified, and/or redeveloped "big box" retailers are exempted from this requirement. (ECF No. 7 at 9). The FAC further alleges that new, modified, and/or redeveloped small retailers are subject to "penalties and an annual alcohol sales regulatory fee" that do not apply to "larger businesses." *Id.*

HSH and HS Razuki have alleged that they are subjected to burdens that the "big-box" retailers are exempt from, despite the fact that "big-box" retailers may sell a larger volume of alcohol. Those burdens include a conditional use permit requirement and "an annual alcohol sales regulatory fee." These allegations of unequal treatment between competing businesses are sufficient to confer standing. *See Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 227 (1987) (holding that the plaintiff had standing to challenge a state statute that adversely affected it, where "others similarly situated [are] exempt from" its requirements); *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) (noting that the "injury in fact" in an equal protection case is the imposition of a barrier that others are not subject to); *Barnes-Wallace v. City of San Diego*, 704 F.3d 1067, 1086 (9th Cir. 2012) ("[W]hen

the government imposes a discriminatory barrier making it more difficult for members of a group to obtain a benefit (such as a government contract), the injury of unequal opportunity to compete confers standing."). HSH and HS Razuki have alleged sufficient facts to establish standing to pursue an equal protection claim.

### B. Void for Vagueness under the Due Process Clause (Second Claim)

The FAC alleges that the Ordinance is void for vagueness because several phrases and terms are undefined and "unnecessarily ambiguous." (ECF No. 7 at 10-11). Specifically, Plaintiffs allege that the vague phrases include: "adverse effects," "health, peace or safety of persons," "jeopardize or endanger," "public health or safety of persons," "repeated nuisance activities," "compatible with and not adversely affect [sic] the livability or appropriate development," "disturbance of the peace," "excessive loud noises," and "late night or early morning hours." *Id.* at 10. Plaintiffs allege that the vague words include: "adverse," "repeated," "peace," "excessive," "late," and "early." *Id.* at 11. However, Plaintiffs do not allege that they have been injured or will be injured in any way by enforcement of any of these allegedly vague provisions. *See Carrico*, 656 F.3d at 1006-07 (holding that the allegation that the plaintiffs are "subject to the legal and constitutional infirmities of [a] municipal ordinance" is insufficient to confer standing to bring First Amendment and void for vagueness challenges to a statute because "[the plaintiff] has not demonstrated that its members have 'an intention to engage in a course of conduct arguably affected with a constitutional interest,' that what they wish to do is 'proscribed by [the ordinance],' or that they face 'a credible threat of prosecution thereunder'") (citing *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979)). Without an actual or imminent injury resulting from the alleged vagueness of the Ordinance, Plaintiffs lack standing to challenge the Ordinance on vagueness grounds. *See Lujan*, 504 U.S. at 560 ("[T]here must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant....") (citing *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).

The injuries that Plaintiffs have identified in the complaint are not alleged to stem from the Ordinance's allegedly vague provisions. The conclusory allegation that HS Razuki "will operate in the same manner in which it has been operating . . . in violation of various operational standards" does not demonstrate that HS Razuki will be injured because the Ordinance is vague. Similarly, the conclusory allegation that Plaintiffs will be unable to attend the required employee trainings cannot confer standing here because the employee training provision, ECMC §17.210.230(G), is not alleged to be vague. Finally, the allegation that Plaintiffs' businesses suffer "diminution in value" is not an injury that the void for vagueness doctrine aims to prevent. *See Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (noting that vague laws "may trap the innocent by not providing fair warning" and "impermissibly delegate[] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application").

Plaintiffs have failed to demonstrate that any of their alleged injuries are the result of vagueness. Plaintiffs lack standing to bring a void for vagueness challenge.

**C. Due Process (Third Claim)**

Plaintiffs allege that the Ordinance violates the Due Process Clause because it allows for the commencement of revocation proceedings before imposing additional conditions. (ECF No. 7 at 12). Plaintiffs further allege that the City's Planning Commission may revoke a conditional use permit or deemed approved status at the first hearing without first imposing "conditions to remedy this situation." *Id.* Finally, Plaintiffs allege that "in order to challenge any imposed suspension, modification, or revocation of a conditional use permit or deemed-approved status, it requires the accused to seek an administrative hearing which is inherently unfair and violates Due Process under the Fifth and Fourteenth Amendments." (ECF No. 7 at 11).

"The requirements of procedural due process apply only to [government] deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). For a

procedural due process claim, a plaintiff must establish that (1) the type of government action is one to which due process applies, and (2) the plaintiff was deprived of a protected property interest. *Harris v. Cnty. of Riverside*, 904 F.2d 497, 501 (9th Cir. 1990). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Due process requires consideration of the following factors: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976).

The procedures of a legislative enactment may also be challenged facially. *United States v. Salerno*, 481 U.S. 739, 751-52 (1987). "[T]he challenger must establish that no set of circumstances exists under which the Act would be valid." *Id.* at 745. "The fact that [a legislative act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Id.* In other words, if the procedures would be adequate as to some persons, the statute is to be upheld. *Id.* at 751.

Whether cast as a procedural due process claim or a facial challenge to the Ordinance's procedures, Plaintiffs allege no facts to show they have been subjected to the Ordinance's allegedly "unfair and unbalanced" procedures that "fail to protect businesses' vested rights to continued to operate their stores." (ECF No. 7 at 12). Plaintiff's challenge is therefore a pre-enforcement challenge. *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010). For pre-enforcement challenges, the Ninth Circuit considers the following three factors:

> First, we have considered whether pre-enforcement plaintiffs have failed to show a reasonable likelihood that the government will enforce the challenged law against them. Second, we have considered whether the plaintiffs have failed to establish, with some degree of concrete detail, that they intend to violate the challenged law. We have also considered a third factor, whether the challenged law is inapplicable to the plaintiffs, either by its terms or as interpreted by the government.

*Id.* at 786.

In this case, Plaintiffs allege, in conclusory fashion, that they will be unable to comply with the Ordinance's employee trainings requirement, and HS Razuki alleges that it "will operate in the same manner in which it has been operating" and "it will be in violation of various operational standards contained in section 17.210.100 of the Ordinance." (ECF No. 7 at 4). These vague allegations do not provide any "degree of concrete detail" as to how Plaintiffs will violate the ordinance. *Lopez*, 630 F.3d at 786; *see also Carrico*, 656 F.3d at 1007 ("Without any description of intended . . . conduct, we cannot analyze what [the plaintiff's members] would like to do."). Second, Plaintiffs have failed to allege any facts demonstrating a credible threat of prosecution. *See Lopez*, 630 F.3d at 786-87 (noting that the government communicating a specific warning or threat to initiate proceedings or a history of past prosecution suffice, but "general threats" do not suffice.).

Finally, Plaintiff's alleged injuries remain "hypothetical" and "conjectural." *Lujan*, 504 U.S. at 561. Plaintiff's alleged injuries depend on at least three events happening. First, Plaintiffs will need to remain unable to send their employees to the required trainings and HS Razuki will need to remain unwilling to comply with the Operational Standards. Second, the City will need to commence revocation, modification, or commencement proceedings. Third, the City will need to suspend, modify, or revoke Plaintiff's conditional use permits or deemed approved status in the manner in which Plaintiffs complain, namely, by suspending, modifying, or revoking without first imposing conditions to remedy the violation. The Court concludes that Plaintiffs have failed to allege "a plausible injury in fact" or a "credible threat of prosecution" flowing from the Ordinance's allegedly "unfair and unbalanced"

procedures that "fail to protect businesses' vested rights to continued to operate their stores," (ECF No. 7 at 12).

Whether or not Plaintiffs will be able to allege a plausible, pre-enforcement injury in fact, Plaintiff's due process claim is unripe. Enforcement of the Ordinance without the allegedly necessary procedural safeguards remains entirely hypothetical. *See Witt v. Dep't of Air Force*, 527 F.3d 806, 812-13 (9th Cir. 2008) (holding that procedural due process record was unripe because the alleged deprivation of a property interest had not yet occurred).

### iv. Conclusion

Defendant's Motion to Dismiss for lack of standing is denied as to Plaintiffs HSH and HS Razuki's equal protection claim (First Claim). Defendant's Motion to Dismiss for lack of standing is granted as to Plaintiffs' void for vagueness and due process claims (Second and Third Claims).

## IV. Failure to State a Claim

### A. 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pac. Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are

1  merely conclusory, unwarranted deductions of fact, or unreasonable inferences." 
2  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "In sum, for a 
3  complaint to survive a motion to dismiss, the non-conclusory factual content, and 
4  reasonable inferences from that content, must be plausibly suggestive of a claim 
5  entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 
6  2009) (quotations omitted).

**B.  Equal Protection (First Claim)**

Defendant contends that Plaintiffs have failed to state an equal protection claim on the grounds that the ordinance requires the same performance standards for "big-box" retailers and other off-site retail stores with deemed approved status.  (ECF No. 12-1 at 18-19).  Defendant also contends that the Ordinance is a proper exercise of the City's police power in protecting against the harmful effects attributable to the sale of alcoholic beverages and preventing nuisance.  Plaintiffs contend that they have stated an equal protection claim by alleging the existence of a facially discriminatory ordinance, and their burden of establishing a lack of a rational basis need not be met at this stage in the proceedings.   Plaintiffs also contend that there is no rational basis for limiting the exemption to establishments over a certain square footage. (ECF No. 13 at 16).

"The first step in equal protection analysis is to identify the [defendant's] classification of groups."  *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) (quoting *Country Classic Dairies, Inc. v. State of Mont., Dep't of Commerce Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988)).  "To accomplish this, a plaintiff can show that the law is applied in a discriminatory manner or imposes different burdens on different classes of people."  *Freeman*, 68 F.3d at 1187 (citing *Christy v. Hodel*, 857 F.2d 1324, 1331 (9th Cir. 1988), *cert. denied*, 490 U.S. 1114 (1989)). "Once the plaintiff establishes governmental classification, it is necessary to identify a 'similarly situated' class against which the plaintiff's class can be compared." *Freeman*, 68 F.3d at 1187.

The next step is to identify the proper level of scrutiny. *Id.* "[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Under the rational basis test, "a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (citation and internal quotations omitted).

The FAC alleges that the Ordinance violates the Equal Protection Clause because new, modified and/or redeveloped small retailers are required to obtain a conditional use permit, while new, modified, and/or redeveloped "big box" retailers are exempted from this requirement. (ECF No. 7 at 9). The FAC further alleges that new, modified, and/or redeveloped small retailers are subject to "penalties and an annual alcohol sales regulatory fee" that do not apply to "larger businesses." *Id.* The FAC alleges that only "small off-sale alcoholic beverage retailers (new, modified, and or/redeveloped) can be denied their vested right to operate their business for not complying with the Ordinance." *Id.* at 10. The FAC further alleges that "[t]he Ordinance is not rationally related to any legitimate goal because the right to operating an off-sale alcoholic beverage business is based solely on the basis of the establishment's size, not the volume of alcohol sales and/or frequency of nuisance activities." *Id.*

In this case, Plaintiffs challenge the classification made in the Ordinance between "an alcoholic beverage establishment consisting of a general retail store, a grocery store, or a retail pharmacy, which has (1) at least 10,000 square feet of gross floor space, and (2) a maximum of 10 percent of the gross floor area devoted to the sales and display of alcoholic beverages" (hereinafter "big-box retailers") and other "off-sale alcoholic beverage establishments" (hereinafter "other retailers"). ECMC §§ 17.210.070-80. The Ordinance requires that new, modified, or redeveloped other retailers obtain a

1  conditional use permit before operating. ECMC § 17.210.070. Big-box retailers are
2  exempt from this requirement (the "exemption"). ECMC § 17.210.080. Big-box
3  retailers are "deemed to have been approved to conduct alcoholic beverage sales
4  commercial activity *subject to the terms and conditions of a conditional use permit*
5  *required under this chapter* provided, however, that if it is found to be in violation of
6  this chapter such an exempt establishment may lose its exemption and be required to
7  obtain a conditional use permit." *Id.* (emphasis added).

8        Under the Ordinance, big-box retailers may change their activities or open a new
9  location without having to apply for a conditional use permit, while new, modified, and
10 redeveloped other retailers must apply for a conditional use permit. Conditional use
11 permits are governed by section 17.50. Section 17.50.060 provides that "[b]efore any
12 conditional use permit or minor conditional use permit may be approved, the decision-
13 making body shall find," *inter alia*, that "[t]he proposed use is consistent with
14 applicable goals, policies, and programs of the general plan, and with any applicable
15 specific plan." ECMC § 17.50.060. Other retailers, therefore, cannot "redevelop" or
16 "modify" without facing the possibility that a conditional use permit will be denied,
17 while big-box retailers do not face this same hurdle.

18       The next step in the equal protection analysis is to identify the proper level of
19 scrutiny. *Freeman*, 68 F.3d at 1187. Because the distinction drawn between big-box
20 retailers and other retailers does not "jeopardize[] exercise of a fundamental right or
21 categorize[] on the basis of an inherently suspect characteristic," *Nordlinger*, 505 U.S. at
22 10, the rational basis test applies. *See Isbell v. City of San Diego*, 258 F.3d 1108, 1116
23 (9th Cir. 2001) ("[A] classification of adult businesses therefore does not impinge on
24 a fundamental right, nor does it involve a suspect classification."). The Ordinance's
25 classification between big-box retailers and other retailers "must be upheld against
26 equal protection challenge if there is any reasonably conceivable state of facts that could
27 provide a rational basis for the classification." *Heller*, 509 U.S. at 320. Defendant "has
28 no obligation to produce evidence to sustain the rationality" of the Ordinance. *Id.* The

1  Ordinance is presumed constitutional, and the burden is on Plaintiffs to "negative every
2  conceivable basis which might support it." *Id.* (citing *Lehnhausen v. Lake Shore Auto*
3  *Parts Co.*, 410 U.S. 356, 364 (1973)).

4        The rational basis test may be applied on a motion to dismiss. *See Fields v.*
5  *Palmdale Sch. Dist.*, 427 F.3d 1197, 1208-11 (9th Cir. 2005). However, "rational basis
6  review at the motion to dismiss stage poses unique challenges." *Immaculate Heart*
7  *Central Sch. v. N.Y. State Pub. High Sch. Athletic Ass'n*, 797 F. Supp. 2d 204, 211
8  (N.D.N.Y. 2011). A court should "take as true all of the complaint's allegations and
9  reasonable inferences that follow," but the "plaintiff must allege facts sufficient to
10 overcome the presumption of rationality that applies to government classifications."
11 *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992). In applying the
12 rational basis test at the motion to dismiss stage, a court may go beyond the pleadings
13 to hypothesize a legitimate governmental purpose. *Mahone v. Addicks Utility Dist. of*
14 *Harris Cnty.*, 836 F.2d 921, 936 (5th Cir. 1988). However, "the rational relationship
15 must be real." *Id.* at 937. "The appropriateness of looking beyond the pleadings to
16 perform a rational relationship analysis" depends on (1) "the specific facts pleaded by
17 the plaintiff[,]" (2) "the state of knowledge of the court making the analysis[,] and (3)
18 "the complexity of the official action which is being challenged." *Id.*

19       The Ordinance's stated "specific purposes" include, *inter alia*, "[t]o provide that
20 alcoholic beverage sales establishments are not to become the source of undue public
21 nuisances in the community . . . [t]o provide for properly maintained alcoholic beverage
22 sales establishments so that the secondary effects of negative impacts generated by these
23 activities on the surrounding environment are mitigated . . . [and] [t]o monitor deemed
24 approved establishments to ensure they do not substantially change in mode or character
25 of operation." ECMC §§ 17.210.020(D),(E),(F). One of the stated purposes of the
26 Ordinance, nuisance prevention, is a legitimate exercise of a local government's police
27 powers. *See City of Oakland v. Superior Court*, 45 Cal. App. 4th 740, 757 (1996) ("A
28 municipality retains the right to abate nuisances and enforce its criminal laws even in

1  the face of grandfather rights."); *cf. Keystone Bituminous Coal Ass'n v. DeBenedictis*,
2  480 U.S. 470, 492 (1987) (reaffirming that "the public interest in preventing activities
3  similar to public nuisances is a substantial one").

4      The goal of preventing alcohol-related nuisances is rationally furthered by
5  treating retailers substantially dedicated to alcohol sales differently than retailers with
6  less than ten percent of their floor space dedicated to alcohol sales. In addition, the
7  FAC repeatedly contrasts big-box retailers with what it terms "smaller neighborhood
8  businesses" or "small neighborhood establishments." (ECF No. 7 at 2-3). Defendant
9  has a rational basis in regulating "small neighborhood establishments" more closely
10 than big-box retailers because the former are commonly found in residential
11 neighborhoods, while the latter are not. The requirement that only other retailers (and
12 not big-box retailers) obtain a conditional use permit is rationally related to the
13 legitimate governmental purpose of preventing alcohol-related nuisances. Plaintiffs
14 have failed to meet their burden in showing that there is no "reasonably conceivable
15 state of facts that could provide a rational basis for the classification." *Heller*, 509 U.S.
16 at 320.

17     As to the other alleged classification, "penalties and an annual alcohol sales
18 regulatory fee," the FAC fails to plausibly allege a classification at all. The FAC
19 alleges no facts and cites no portions of the Ordinance demonstrating how these fees
20 and penalties apply and to which establishments they apply. It is impossible to tell from
21 the FAC whether, with regard to fees and penalties, the Ordinance "imposes different
22 burdens on different classes of people." *Freeman*, 68 F.3d at 1187. Furthermore, the
23 FAC alleges no facts demonstrating that the imposition of these fees and penalties on
24 certain establishment while not on others is without a rational basis.

25     Defendant's Motion to Dismiss Plaintiffs' equal protection claim (First Claim)
26 is granted.

27     **C.  State Law Claims**
28     The FAC's remaining claims assert violations of California law: preemption by

California Business & Professions Code § 23790, preemption by Article XX of the California Constitution, violation of Article XIII C, § 2(b) of the California Constitution as amended by Proposition 26, and violation of Article XIII C, § 2(d) of the California Constitution. The FAC does not allege that this Court has diversity jurisdiction; the FAC alleges that this Court has supplemental jurisdiction over the state law claims. (ECF No. 7 at 6).

The federal supplemental jurisdiction statute provides: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a state law claim if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Having dismissed the federal claims asserted by Plaintiffs against Defendant, the Court declines to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c). *See San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998).

///

**V.  Conclusion**

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (ECF No. 12) is GRANTED.  No later than thirty (30) days from the date this Order is filed, Plaintiffs may file a motion for leave to amend the First Amended Complaint, accompanied by a proposed second amended complaint.

DATED:  September 4, 2014

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge